UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JERRY W. LOOP, | ) | |
| | ) | |
| Plaintiff, | ) | Case  No. EDCV 07-00015 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 1-2].  Two administrative hearings were held in this case, the second one by a different administrative law judge ("ALJ") after the case was remanded by the Appeals Council. [JS 1-2]. It is the later decision that is under review. In a July 28, 2005 written hearing decision that constitutes the final decision of the Commissioner, the ALJ found that plaintiff had severe impairments consisting of degenerative disc disease of the lumbar spine, right calcaneal spur, and a pacemaker, but that those

1  impairments did not preclude plaintiff from performing work existing in significant numbers in the national

2  economy. [See JS 2; AR 19-21].  Therefore, the ALJ found plaintiff "not disabled" at any time through the

3  date of his decision. [AR 19-21].

**Standard of Review**

5      The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

6  evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

7  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

8  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

9  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

10  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted).  The court is

11  required to review the record as a whole and to consider evidence detracting from the decision as well as

12  evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

13  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

14  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

15  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

17    **Medical evidence**

18      Plaintiff contends that the ALJ failed properly to consider all of the medical evidence of record in

19  assessing plaintiff's residual functional capacity ("RFC"). [JS3-5].

20      The ALJ found that plaintiff retained the RFC for light work with the option of sitting or standing

21  at will, with only occasional stooping, kneeling, crouching, and crawling, no exposure to unprotected

22  heights or dangerous machinery, and no driving.  The ALJ further found that plaintiff could understand,

23  remember, and carry out simple one and two-step job instructions and tasks but not detailed or complex job

24  instructions or tasks. [AR 19].

25      Plaintiff argues that the ALJ mischaracterized the record when he said that plaintiff "has not been

26  hospitalized, or to the emergency room with complaints nor has he described any side effects from his

27  medication." [AR 16]. Plaintiff points to medical reports indicating that plaintiff was hospitalized in August

28  2000 for his cardiac condition and implantation of a pacemaker, and again in March 2001 for his cardiac

1    condition.  Plaintiff also relies on medical evidence that plaintiff presented to urgent care on several

2    occasions and sought care in the emergency department for his cardiac condition in September 2000 and

3    for back pain in May 2002 and June 2002.

4            Plaintiff takes the ALJ's statement out of context.  The ALJ did not deny that plaintiff ever had been

5    hospitalized or received emergency care; however, he concluded that the medical treatment plaintiff

6    received overall was not consistent with disabling cardiac and spine disorders. [See, e.g., AR 16 ("[T]here

7    is no evidence of neurological compromise relative to the claimant's spine, and physician[s] have not

8    described him as being a surgical candidate, nor has he required a series of hospitalizations or prolonged

9    participation in a pain clinic for severe lumbar symptomatology.")]. The ALJ described plaintiff's August

10   2000 hospitalization and pacemaker implantation. [AR 14]. He noted that on discharge plaintiff tolerated

11   an exercise treadmill test for 10 minutes without chest pain or EKG changes and was noted to be chest pain

12   free with a heart rate of 60 and normal blood pressure.  The ALJ also mentioned that plaintiff was admitted

13   to Kaiser Permanente Hospital on March 21, 2001 for one night for observation and evaluation of his

14   pacemaker. [AR 14, 290-298].  Plaintiff's discharge diagnoses were (1) "no acute cardiac pathology found";

15   (2) "hyperlipidimia, therapy begun with this hospitalization"; (3) "previous bradycardia" (slow heartbeat);

16   and (4) past placement of a DDDR pacemaker with low rate at 60; question of ventricular lead fracture, but

17   pacemaker still working quite well." [AR 290].  The ALJ referred to treatment reports from plaintiff's urgent

18   care visit in May 2000 for a heel spur.[AR 14, 265, 271].  The ALJ discussed a June 2002 lumbar spine x-

19   ray showing mild degenerative changes and a lumbar spine CT study showing a small protrusion at L5-S1

20   and a disc bulge at L203 with mild stenosis. [AR 14-15, 353-354].

21           Plaintiff also went to urgent care at Kaiser Permanente once in February 1998 for removal of sutures

22   for an unspecified injury and twice in January 1999, once for back pain and once for a scalp lesion suffered

23   in an altercation. [AR 266-268].  Plaintiff was seen at Kaiser Permanente emergency department in May

24   2002 and June 2002 for back pain. He reported that he had "off/on" back pain for the past 6 years. He was

25   diagnosed with chronic low back pain and prescribed Motrin, Vicodin, and Flexeril. [AR 319, 351]. In June

26   2002, he was referred to Jennifer Chen, M.D., for a physical medicine evaluation. He told Dr. Chen that he

27   "has had some intermittent low back pain with intermittent acute exacerbations which have been controlled

28   with Vicodin and nonsteroidal anti-inflammatory medication.  The patient states approximately six weeks

3

1    ago the patient was in his garden and subsequently developed increased low back pain." [AR 348].  Dr.

2    Chen's diagnosis was "[c]hronic low back pain, currently with acute exacerbation, suspect lumbar strain.

3    Overall, patient with a normal neurologic examination." [AR 349].  Although the ALJ did not explicitly

4    reference these reports from Kaiser, they are consistent with other evidence he summarized in his decision,

5    and they provide additional support for his determination that plaintiff retains the RFC to perform a

6    narrowed range of light work.

7         Plaintiff's contention that the ALJ "completely ignored" an August 2002 left knee x-ray showing

8    "evidence of degenerative joint disease" is misleading. The x-ray report showed only "minimal to slight

9    narrowing over the medial compartment" of the left and right knee joints on weight-bearing view but was

10   "otherwise unremarkable." [AR 352].  In addition, the ALJ noted that Dr. Chen, the physician who ordered

11   that x-ray, conducted a follow-up examination in August 2002 that was generally unremarkable. [AR 15,

12   343-344]. Plaintiff had questionable mild effusion in the left knee.  His ability to ambulate and perform

13   activities of daily living was intact. He could stand on his toes and heels and could squat and rise.  He

14   reported that pain and anti-inflammatory medications were helping.  He was directed to continue with

15   exercises and physical therapy.[AR 343-344].

16        Overall, the ALJ's summary of the medical evidence did not misstate or mischaracterize the record

17   regarding plaintiff's heart and back conditions. See  Howard ex rel. Wolff v. Barnhart,  341 F.3d 1006, 1012

18   (9th Cir. 2003)("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss

19   every piece of evidence.'")(quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) and citing Vincent

20   v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

21        Plaintiff also contends that in finding that plaintiff can understand, remember, and carry out simple

22   one or two step job instructions and tasks," the ALJ failed properly to take into account plaintiff's "learning

23   disability." [JS 4].  Plaintiff argues that the ALJ improperly disregarded, or failed to develop the record with

24   respect to, plaintiff's testimony that he was in special education classes and finished only the 10th grade,

25   could not read or write, required three attempts to pass a verbal administration of the California driver's

26   license examination test, and had obtained his past jobs with the help of friends or family. Plaintiff also

27   argues that the ALJ improperly denied his requests for psychological testing. [JS 4-5].

28        Plaintiff alleged that he was disabled due to back and heart problems; he did not allege a learning

1 disability or mental limitations. [AR 152-153, 173, 179].  His disability report states that he completed the

2 tenth grade in special education classes at Poly High School in Riverside, California. [AR 159].  School

3 records from Riverside Unified School District indicate that plaintiff was not enrolled in special education

4 classes during the tenth grade at Polytechnic High School, but that he was enrolled in "Remedial Reading"

5 and "Basic Skills" classes as an eleventh grade student before leaving school in October 1974. [AR 366].

6  It also appears that he may have been in special education classes as a student at Norco Junior High School.

7 [AR 367].

8 A "Report of Contact" dated May 31, 2002 indicates that a disability analyst spoke to plaintiff, who

9 reported that he had taken special education classes at Poly High School in Riverside. [AR 170]. Plaintiff

10 said that he had never sought or received mental health treatment.  He did not allege any mental problem

11 and "had performed at [substantial gainful activity] levels in the past." [AR 170].  During his conversation

12 with the analyst, plaintiff was "logical, coherent and goal-directed in his speech; he was quick to answer

13 questions; and he mad no mention of any [history] of mental problems." [AR 170]. Based on this

14 information, the analyst determined that there was no need for further development of facts regarding any

15 potential psychological or psychiatric problem. [AR 170].

16 Although plaintiff's past jobs did not qualify as past relevant work because he had only four months

17 of employment within the 15 years prior to the second hearing, plaintiff's testimony, vocational reports,

18 social security earnings record, and the testimony of a vocational expert establish that plaintiff previously

19 had worked as a construction worker, street light installer and repairer, cabinet edge bander and machine

20 marble polisher.  [AR 130-132, 182-183, 486-496, 516].

21 The ALJ found that plaintiff had "limited education," which corresponds to a 7th grade through 11th

22 grade formal education. See 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).  In light of plaintiff's testimony,

23 the ALJ restricted plaintiff to simple, repetitive one work involving one- or two-step tasks. The ALJ also

24 found that plaintiff could perform light work with a sit/stand option, provided he did not have do more than

25 occasional stooping, kneeling, crouching, or crawling and did not have to work around unprotected heights,

26 dangerous machinery, or drive. [AR 19]. The vocational expert testified that a person with plaintiff's

27 background and limitations could perform the jobs of bench assembler, ticket taker, and usher even if that

28 person also was illiterate. [AR 516-518].

5

1   The ALJ did not err in failing to develop the record further regarding mental limitations.  Plaintiff

2   alleged no mental impairment and had no past mental health diagnosis or treatment.  The record contained

3   no medical evidence of a medically determinable mental impairment. A disability analyst concluded that

4   no further development of the record was needed after interviewing plaintiff by phone. Although plaintiff

5   had a limited education, including some special education classes, and alleged that he was illiterate, that had

6   not precluded him from obtaining and maintaining jobs in the past.

7   Under the Medical-Vocational Guidelines or "grids," a "younger individual" (such as plaintiff) who

8   has a "limited education or less," no past relevant work, and who can perform the full range of light work

9   is considered not disabled, even if that person is illiterate or unable to communicate in English.  See Part

10   404, Subpart B, Appendix 2,  Rules 202.16 and 202.17.  The ALJ could not rely on the grids because

11   plaintiff's nonexertional limitations preclude plaintiff from performing the full range of light work, but the

12   ALJ permissibly used the grids as a framework for decision making. See 20 C.F.R. Part 404, Subpart P,

13   Appendix 2, § 200.00(e)(2).  In addition, the vocational expert testified that a person with plaintiff's

14   educational and vocational profile and the RFC described by the ALJ could perform alternative jobs that

15   exist in significant numbers in the national economy.  The vocational expert testified that alternative jobs

16   would still be available if the individual was illiterate (but could communicate in English, as plaintiff can).

17   [AR 517-521].        For all of these reasons, the ALJ's consideration of the medical evidence and

18   plaintiff's educational background provides no basis for reversing the denial of benefits.

19   **Subjective complaints**

20   Plaintiff contends that the ALJ failed properly to consider his subjective complaints. [JS 7-10].

21   Once a disability claimant produces evidence of an underlying physical or mental impairment that

22   is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to

23   consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885

24   (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§

25   404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  Although the ALJ may

26   then disregard the subjective testimony he considers not credible, he must provide specific, convincing

27   reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d

28   at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective

1  testimony of claimant without providing "clear and convincing reasons").  The ALJ's credibility findings

2  "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's

3  testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367

4  F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating the factors

5  that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir.

6  1989)(same).  If the ALJ's assessment of the claimant's testimony is reasonable and is supported by

7  substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857

8  (9th Cir. 2001).

9  　　　　The ALJ noted that plaintiff completed a daily activities questionnaire indicating that he cared for

10  his personal needs, vacuumed, swept, dusted, put dishes in the dishwasher, did yard work, helped straighten

11  the house, watered the yard, and watched television. He said that his hobby was fishing, and that he visited

12  friends or family twice a week. [AR 15-16, 126]. He also said that he sometimes needed help with

13  household chores, when his arms were hurting, or if he was tired or had chest pain. He said he became tired

14  more easily and could not lift heavy equipment due to his back. [AR 126].  He did "yard work at various

15  times during the day" but took intervals of rest in between.  Some days he "cannot do anything because of

16  the pain," and other days he "can move about freely." [Ar 167].  Plaintiff said he did "less than he used to

17  because I get tired easier, have pain and have shortness of breath," and he "usually [took] a nap daily at

18  various times."  [AR 169].

19  　　　　During the hearing, plaintiff testified that his heart felt normal to him. [AR 512]. He said his back

20  pain was worse than his chest pain.  Asked by the ALJ how often he had chest pain, he responded, "I don't

21  know every two weeks, every month, I don't know." [AR 513]. He testified that he could water the grass

22  for ten or fifteen minutes before his back started hurting and his "head rushes." [AR 513].  He said he could

23  walk around the block, but then added that he would have to stop "[b]ecause it just hurts, just from

24  walking." [AR 514].  He could sit in a chair but had to move around and change positions after twenty

25  minutes or so to "feel good." [AR 514].

26  　　　　The ALJ did not "doubt that [plaintiff] had pain" and other symptoms and accordingly limited

27  plaintiff to light work where he could sit or stand at will and was not exposed to heights or dangerous

28  machinery.  The ALJ, however, articulated clear and convincing reasons for concluding that plaintiff did

1   not suffer from disabling symptoms.   Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (observing that

2   disability insurance benefits are not intended for those who experience nondisabling pain).

3       First, the ALJ observed that plaintiff engaged in a fairly typical range of daily activities.   See

4   Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir.1993) (holding that the claimant's ability to perform

5   housecleaning, light gardening, and shopping was a factor supporting the ALJ's negative credibility

6   finding).

7       Second, the ALJ pointed out the absence of objective medical evidence to corroborate the alleged

8   severity of plaintiff's subjective complaints and the lack of intensive or aggressive treatment of his allegedly

9   disabling subjective symptoms. Medical records regarding plaintiff's back condition revealed no evidence

10  of neurological compromise.  He was not a candidate for surgery and had not undergone a series of

11  hospitalizations or prolonged participation in a pain clinic.  Examination findings included tenderness to

12  palpation in the lumbar spine region, but plaintiff had a normal gait, normal deep tendon reflexes, negative

13  straight leg raising test, intact sensation, and no motor strength deficits. [AR 16].[1] Plaintiff had a pacemaker

14  placed in August 2000, and thereafter was noted to be free of chest pain during a treadmill stress test.

15  Although plaintiff was admitted in March 2001 for one night for observation of his pacemaker, it was found

16  to be functioning effectively, and no acute cardiac pathology was detected.  Aside from that, plaintiff had

17  no significant treatment related to pacemaker or cardiac complaints. The ALJ did not err in determining that

18  the medical evidence and treatment history were inconsistent with allegations of disabling symptoms. See

19  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although lack of medical evidence cannot form the

20  sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility

21  analysis."); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ permissibly

22  considered the treating physician's failure to prescribe, and the claimant's failure to request, medical

23  treatment commensurate with the "supposedly excruciating" pain alleged and her "minimal, conservative

24  treatment")

25

26      [1]   The ALJ did not comment on Dr. Jennifer Chen's finding that plaintiff had a positive
    Hoover's test [AR 349]; however, that test result was cited in the testimony of the medical expert
27  who testified during the first hearing. [AR 481]. A positive Hoover's test indicates leg pain or
    symptoms that do not have an organic basis and therefore may be exaggerated or falsified. See 2 Dan
28  J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook § 18:4 (4th ed.).

1    The ALJ observed that plaintiff's physicians had not imposed any functional limitations due to

2  plaintiff's subjective symptoms, and the Commissioner's examining and nonexamining physicians opined

3  he was not disabled. [AR16].  See Light, 119 F.3d at 792 (stating that the ALJ may consider information

4  from physicians regarding the nature and effect of a claimant's symptoms). Plaintiff's symptoms were

5  managed with medication, and he did not complain to his providers of side effects. [See, e.g., AR 428

6  ("Wife states meds help keep [plaintiff] moving better. . . . [Plaintiff] [f]eels meds help."); AR 464

7  ("[Plaintiff] [f]eels meds help significantly. . . . [B]ack pain - manageable with meds. . . . Denies adverse

8  reactions/side effects from meds."). See Warre v. Comm'r of the Social Security Admin., 439 F.3d 1001,

9  1006  (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling.");

10  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam) (holding that the ALJ permissibly relied

11  upon the absence of side effects from medication to reject the alleged severity of subjective symptoms).

12    The ALJ made specific, convincing findings justifying his credibility assessment, and those findings

13  are supported by substantial evidence in the record.

14    **Vocational evidence**

15    Plaintiff contends that the vocational expert's testimony that the jobs of cashier and counter clerk

16  could be performed by a person who could not read or write is not credible, and that the ALJ posed an

17  incomplete hypothetical question because it reflected an erroneous interpretation of the medical evidence

18  and plaintiff's testimony.

19    The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical

20  questions that set out all of the claimant's impairments for the consideration of the vocational expert, who

21  then "translates these factual scenarios into realistic job market probabilities ...." Tackett v. Apfel, 180 F.3d

22  1094, 1101 (9th Cir. 1999).  Hypothetical questions posed to the vocational expert must accurately describe

23  all of the limitations and restrictions of the claimant that are supported by substantial evidence in the record.

24  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); Tackett, 180 F.3d at 1101.  A vocational

25  expert's response to a hypothetical question constitutes substantial evidence only if it is supported by the

26  medical evidence.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

27    Plaintiff's argument is flawed.  To begin with, the ALJ did not find that plaintiff was illiterate.

28  Instead, he found that plaintiff has a "limited education" and can perform no more than simple, repetitive

1 | jobs involving one- or two-step tasks.  Even if the ALJ erred in not making a finding that plaintiff is

2 | illiterate, any error was harmless because the ALJ asked the vocational expert to assume that the

3 | hypothetical individual was illiterate. [AR 516].  For the reasons already explained above, the ALJ's

4 | hypothetical question [AR 516-517] was not incomplete or inaccurate in other respects, but instead

5 | accurately reflected the limitations that were borne out by the record. The vocational expert identified

6 | several jobs that an illiterate individual with plaintiff's background and RFC could perform, among them

7 | the Dictionary of Occupational Title jobs of "cashier 2" and counter clerk. [AR 516-618]. The vocational

8 | expert subsequently testified that a restriction to one- or two-step tasks would not significantly change the

9 | number of bench assembler positions available, would  preclude a "majority" of the cashier jobs but not all

10 | of them, and generally would not erode the base of counter clerk jobs. [AR 517, 520-521].  Plaintiff has not

11 | presented any evidence that illiteracy would eliminate all or most of the cashier and counter clerk jobs

12 | identified by the vocational expert, but even if plaintiff is correct, the vocational expert identified three

13 | additional jobs within the hypothetical person's RFC: bench assembler (36,000 positions nationally), ticket

14 | taker (15,000 positions nationally), and usher (29,500 positions nationally when reduced by half due to the

15 | need for a sit/stand option).  Using the grids as a framework, the ALJ permissibly relied on the vocational

16 | expert's testimony to support his finding that plaintiff could perform alternative work available in significant

17 | numbers in the national economy. [AR 18-19].

**Conclusion**

19 | For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

20 | is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

DATED:   April 15, 2008

/ s /
ANDREW J. WISTRICH
United States Magistrate Judge